An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-894

Filed 1 July 2026

Wilkes County, Nos. 22JT000123-960, 22JT000124-960

IN THE MATTER OF:
D.D.A., N.A.T.A.

Appeal by Respondent from orders entered 24 June 2025 by Judge Donna L. Shumate in Wilkes County Superior Court. Heard in the Court of Appeals 23 April 2026.

> *Jack T. Brock II, PLLC, by Jack T. Brock II, for Respondent–Appellant Father.*
>
> *Sherryl Roten West, for Petitioner–Appellee Wilkes County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Daniel E. Peterson, for Appellee Guardian ad Litem.*

PER CURIAM.

Respondent (Father) challenges the trial court's termination of his parental rights to D.D.A. (Danielle) and N.A.T.A. (Natalie).[1] He argues that the two orders' findings of fact (FoFs) are not supported by "clear, cogent, and convincing evidence"

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor children by pseudonyms to protect their identities. *See* N.C. R. App. P. 42(b).

and that their derivative conclusions of law (CoLs) must fail as a result. *In re B.O.A.*, 372 N.C. 372, 379 (2019). For the reasons below, we disagree with Father and affirm the trial court's two termination orders.

## I.    Background

Father is a biological parent[2] of Danielle and Natalie, who were respectively born in April 2022 and July 2019. After medical and Child Protective Services (CPS) reports of potential abuse and neglect, the Wilkes County Department of Social Services (DSS) entered into case management with Father and his children on 2 May 2022. Numerous CPS reports and "phone calls from community partners voicing safety concerns for . . . the children" followed, including "unexplained bruising" on the girls' bodies, "improper medical/remedial care," and Father's lack of "mental capacity to meet the[ir] needs." As a result, DSS took "non-secure custody" of the children on 18 August 2022.

On 30 August 2022, Father entered into a Family Services Case Plan with DSS that mandated in relevant part "a mental health and substance abuse assessment." He did not submit to the substance-abuse test but did complete the mental-health assessment through a "Marschak Interaction Method" assessment (MIM) and Woodcock–Johnson IV test. The MIM "determine[d] the relationship and attachment level of . . . [F]ather . . . with [his] daughter[s]," while the Woodcock–Johnson IV

---

2    The biological mother is not a party to this appeal.

assessed his intelligence quotient (IQ). The former found that Father "lack[ed] the basic skills to address the needs of [his] child[ren]" as a result of his "impulsivity" and bi-polar disorder; the latter documented an "overall IQ" of only eighty.

In May 2025, after three years of case-plan progress (over which Father moved out-of-state for another woman at least twice), the trial court heard DSS's 7 August 2024 petition to terminate the parental rights of Father to his two daughters. In its order terminating Father's rights to Danielle (Danielle Order), the trial court documented certain relevant FoFs:

> 30. Father loves the children; however, he does not have the mental capacity to meet the needs of Danielle and her sibling. If the children were placed with Father, there would be a high likelihood of future neglect.
>
> . . . .
>
> 44. Father is limited in his ability to think and reason logically.
>
> . . . .
>
> 71. Father has not made substantial efforts to strengthen and maintain the parent–child relationship. Father over the past six years has moved three times to be with women he has met online. This is evidence of his lack of judgment and impulsivity.
>
> 72. Father has not made a substantial or consistent attempt to provide a safe and loving home for the minor children.
>
> . . . .
>
> 74. The 31 October 2022 adjudication order detailed the history of bruising on Natalie and numerous CPS reports as to the bruising as well as the lice infestation. Father told Evaluator Sizemore that the child was coming back with bruises each time she went to a specific babysitter's home, yet he continued to allow Natalie to go to the sitter's home.
>
> 75. The trial court has considered evidence of changed conditions in light of the evidence of prior neglect and the probability of a

repetition of neglect. After the initial adjudication of neglect, Father cooperated with the MIM analysis with Therapist Jodi Province. Therapist Province concluded that Father seemed to lack the basic skills to address the needs of the child and that he did not meet the "good enough" parent standard. There is no evidence that Father has overcome any of the issues as outlined by Therapist Province.

76. After the initial adjudication of neglect, Father cooperated with a psychological evaluation. Father has difficulties controlling his moods and his anger. He tends to act in an impulsive way. There is a high likelihood of Father repeating his pattern of meeting women online and leaving Danielle behind.

77. Clear, cogent, and convincing facts sufficient to terminate the Father's parental rights exist under N.C.G.S. § 7B-1111(a)(2). Danielle has been willfully placed by Father outside of the home for more than twelve months without showing to the satisfaction of the trial court that reasonable progress under the circumstances has been made correcting the conditions which led to her removal.

. . . .

86. Danielle and her sibling have been in the care and custody of DSS for 33 months. Father has not in nearly three years been able to care for his children. By his own admission, he is not capable of parenting Danielle and her sibling by himself.

(Quotation modified.) The trial court then documented certain CoLs that Danielle was "neglected as defined in N.C.G.S. § 7B-101" and that DSS "has shown grounds" under N.C.G.S. § 7B-1111(a)(1)–(2) to "terminate . . . Father's parental rights" (CoLs #5, #7, and #9).

The trial court entered a concurrent order terminating Father's parental rights to Natalie (Natalie Order), which documented in relevant part that Natalie "had a large bruise on her left buttock . . . spann[ing] upward towards her middle back . . .

[that] appeared to be from a belt" and that "[t]he abuse team ruled that [she] had been physically abused"[3] (FoF #25). Father timely appealed both orders.

## II.     Jurisdiction

This Court has jurisdiction to hear Father's appeal because it concerns "order[s] that terminate[ his] parental rights." N.C.G.S. § 7B-1001(a)(7) (2025).

## III.     Analysis

On appeal, Father challenges multiple FoFs and CoLs across both adjudication orders. In response to the first, he contests FoFs #30, #71–#72, #74–#77, and #86 and CoLs #2 and #6–#9. In response to the second, he contests FoFs #24, #34, #71–#72, #74–#77, and #86 and CoLs #2, #5, and #11–#13. We review these orders only for whether "clear, cogent, and convincing evidence" supports their findings of fact which must, in turn, support their conclusions of law. *B.O.A.*, 372 N.C. at 379. We must affirm any unchallenged findings and those challenged findings supported by this degree of evidence "even if the record . . . would support a contrary finding," *id.*; however, we review any conclusions of law *de novo, see In re K.L.T.*, 374 N.C. 826, 830 (2020).

A termination proceeding typically "consists of an adjudication stage . . . followed by a dispositional stage." *B.O.A.*, 372 N.C. at 379. At this first stage, "the

---

[3]     In the Natalie Order, the trial court also documented FoFs #24, #34, #71–#72, #74–#77, and #86. FoFs #24 and #30 respectively mirror the Danielle Order's FoFs #21 and #34, while CoLs #11 and #13 similarly mirror their counterparts in CoLs #7 and #9. The Natalie Order's remaining FoFs and CoLs recite their Danielle Order counterparts in all material respects.

trial court must 'take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.G.S. §] 7B-1111 which authorize the termination of parental rights of the respondent.' " *Id.* at 379–80 (alterations in original) (quoting N.C.G.S. § 7B-1109(e)). If the trial court finds "any one of the grounds for termination enumerated in N.C.G.S. § 7B-1111(a)," it then "proceed[s] to the dispositional stage" in which it 'determine[s] whether terminating the parent's rights is in the juvenile's best interest.' " *Id.* at 380 (quoting N.C.G.S. § 7B-1110). The trial court may base this termination "upon a finding" of either "parent[al] . . . neglect" or "willful[ ] . . . placement outside the home for more than [twelve] months without showing . . . reasonable progress" towards "correcting those conditions which led to the [juvenile's] removal." N.C.G.S. § 7B-1111(a)(1)–(2). Having reviewed the findings and conclusions at issue here with these principles in mind, we affirm both of the trial court's adjudication orders.

## A. Danielle Order

Regarding the first order, Father argues that the trial court relied on insufficient evidence to reach FoFs #30, #71–#72, #74–#77, and #86 that cannot support CoLs #2 and #6–#9 as a result.[4] We disagree with Father and affirm the trial court's termination of his parental rights to Danielle.

---

[4]  In the Danielle Order, CoLs #2, #6, and #8 restate certain facts respectively found in those same FoFs challenged here on appeal. Because we "apply the appropriate standard of review to a finding of fact or conclusion of law[ ] regardless of [its] label . . . given by the trial court," we regard those

Here, the trial court found clear, cogent, and convincing evidence that Father had both neglected Danielle and willfully left her in DSS's care for more than a year. Father consistently displayed undue impulsivity by moving to a different state for different women over that same time period. He demonstrated no "parenting skills and capacity necessary to care for a child" and refused to "cooperate with mental health/substance abuse assessments." He also left Danielle "in the care and custody of . . . [DSS] for approximately . . . 33 months" throughout this process, over which no new unexplainable bruises seem to have appeared on her body. Finally, he does not challenge the MIM assessment that documented his lack of any "natural parental instinct" and his "limited . . . ability to think and reason logically." Because the trial court could reasonably infer neglect and willful abandonment from these clear, cogent, and convincing facts even though "Father loves his children," we cannot disturb the resulting FoFs. And because these disparate findings stand, we affirm their derivative CoLs that "grounds exist . . . to terminate . . . Father's parental rights" to Danielle under N.C.G.S. § 7B-1111(a). (Quoting N.C.G.S. § 7B-1111(a)(1)–(2).)

## B. Natalie Order

---

putative CoLs as findings, which we review whether they are supported by competent evidence. *In re J.J.B.*, 374 N.C. 787 (2020). Thus, we only review CoLs #5, #7, and #9 as actual conclusions of law *de novo*. We similarly review FoF #77 as an actual conclusion of law *de novo* under the same rationale.

Regarding the second order, Father similarly argues that the trial court relied on insufficient evidence to reach FoFs #24, #34, #71–#72, #74–#77, and #86 that cannot support CoLs #2, #5, and #11–#13 as a result.[5] We disagree with Father and affirm the trial court's termination of his parental rights to Natalie.

Here, the trial court found clear, cogent, and convincing evidence of Father's neglect and willful abandonment of Natalie for the same reasons as with Danielle, as well as additional ones. To wit, it further noted in the unchallenged FoF #25 that Natalie "had new bruising in between her legs and groin area" that "appeared to be from a belt," from which the hospital's "abuse team rule that [Natalie] had been physically abused." And even if the babysitter did indeed cause these bruises, he concedes that "he continued to send N[atalie] to th[at] same babysitter" while doing "nothing to prevent the bruising." Father also failed to meet the MIM standard specifically relating to Natalie, which found that he "lack[ed] the basic skills to address [her] needs." In his appellate brief, Father suggests that DSS based this opinion "on old case information" but leaves unchallenged the trial court's findings that a mere "two years would not likely change his impulsivity or decision-making abilities." For our purposes here, these findings sufficiently bridge the original assessments with the necessary adjudication *"at the time of the termination*

---

[5]  In the Natalie Order, CoLs #2 and #12 also restate facts in same manner as do the Danielle Order's would-be CoLs noted immediately above. We similarly review them as FoFs subject to the trial court's discretion as the factfinder. *See id.*

*proceeding.*" *K.L.T.*, 374 N.C. at 831 (quotation omitted). Because we cannot disturb these FoFs on an evidentiary basis, we affirm their derivative CoLs that "grounds exist . . . to terminate . . . Father's parental rights" to Natalie under N.C.G.S. § 7B-1111(a). (Quoting N.C.G.S. § 7B-1111(a)(1)–(2).)

### C. Shifting of Burden & Lack of *Willfulness*

Father further argues that "the trial court improperly . . . reverse[d] the statutory burden by requiring . . . [him] to prove rehabilitation instead of requiring DSS to prove a likelihood of future neglect by clear, cogent, and convincing evidence[ ] as North Carolina law mandates." We disagree. Although some of the trial court's findings on Father's neglect could be worded more clearly, the trial court did not shift the burden of proof back to him. Its reference to a lack of evidence about Father's progress on issues identified by his therapist tracks with the findings our Supreme Court upheld in *In re A.R.A. See* 373 N.C. 190, 196 (2019) ("Moreover, the district court did not improperly shift DSS' burden of proof onto [the] respondent–mother. Rather, the court simply observed that [she] had failed to rebut DSS' clear, cogent, and convincing evidence that she and the father had not established safe and stable housing for the children." (citing *In re Clark*, 72 N.C. App. 118, 125 (1984)).

Father then argues that the trial "court also erred in concluding that . . . Father willfully left the juveniles in foster care without making reasonable progress" because "[w]*illfulness* requires a deliberate choice, not incapacity. He notes that "DSS's own witnesses described Father as lacking either intellectual functioning or

capacity, which negates th[is] volitional element." We disagree. Though there may have been evidence from which the trial court could have found a lack of willfulness, we conclude that sufficient evidence supports the trial court's finding that Father indeed acted willfully. *See In re J.J.B.*, 374 N.C. 787, 793 (2020) (recognizing that trial court sits as fact-finder).

## IV.    Conclusion

For the reasons discussed above, this Court affirms the trial court's termination of Father's parental rights to Danielle and Natalie.


AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges STROUD and MURRY.

Judge STROUD concurs in result only by separate opinion.

Report per Rule 30(e).

No. COA25-894 – *In re: D.D.A, N.A.T.A*

STROUD, Judge, concurring in result only.

I concur in the result only, for the reasons stated in my separate opinion in *In re: J.R.T.*, ___ N.C. App. ___, 928 S.E.2d 532, 2026 WL 1020606 (2026) (Stroud, J., concurring in result) (unpublished).[1] Once again: "[N]o court or party should rely on this unpublished opinion under Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure." *Id.* at *6 (Stroud, J., concurring in result); *see also* N.C. R. App. P. 30(e)(3) ("If a party believes . . . that an unpublished opinion has precedential value to a material issue in the case and that there is no published opinion that would serve as well, the party may cite the unpublished opinion . . . ."). I mention only my main concern with the *per curiam* opinion.

The framework trial courts apply to adjudicate termination of parental rights claims, as dictated by statute, is central to such cases, and this Court bases its review on that same framework. *See* N.C. Gen. Stat. §§ 7B-1109, -1110 (2025). The trial court here terminated Father's parental rights on two grounds: neglect under North Carolina General Statute Section 7B-1111(a)(1) and failure to make reasonable progress under Section 7B-1111(a)(2).[2] Normally, we review a termination order in two steps. First, we review the adjudication "to determine whether the findings are

---

[1] I appreciate the irony of citing another unpublished opinion, but there is no need to repeat my rationale when my separate opinion in *In re J.R.T.* is available for review.

[2] Father's brief correctly addresses the factual and legal basis for each ground separately.

supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re G.B.*, 377 N.C. 106, 111, 856 S.E.2d 510, 514 (2021) (citation omitted). Second, if the appellant raises the issue, we review the disposition, asking whether the trial court abused its discretion in concluding that termination was in the child's best interests. *Id.* at 111-12, 856 S.E.2d at 515. And when a trial court relies on more than one ground under Section 7B-1111, this Court routinely examines only one. If termination was proper on that ground, we need not (and thus do not) reach the others. *See, e.g., In re B.O.A.*, 372 N.C. 372, 380, 831 S.E.2d 305, 311 (2019) ("As the Court of Appeals has consistently held, a finding by the trial court that any one of the grounds for termination enumerated in [Section] 7B-1111(a) exists is sufficient to support a termination order." (citations omitted)).

The *per curiam* opinion ignores this practice. It addresses both grounds even though, by its own holding, one would do. And it folds the factual and legal arguments for both grounds into a single, undifferentiated discussion. Consistent with the settled practice of the North Carolina appellate courts, I would have analyzed only one ground for termination.

For these reasons and others, I concur in the result only. And I again discourage any future citation to this unpublished opinion under Rule 30(e)(3).